The United States Court of Appeals for the Federal Circuit is now open and in session. God Save the United States and the Honorable Court. Please be seated. The first case for argument this morning is 15-1329 Power Integrations v. Fairchild Semiconductor. And we all know this is a cross appeal, so we understand you're all reserving your time to see how this works out. Whenever you're ready, Mr. Jacobs. May it please the Court. Good morning, Your Honors. Inducement under section- Can you hold down one second just because our clock isn't on. Our time clock is not working. Our time clock is not working. I'm sorry. It's not on. Sorry. Maybe we don't need it for the first one. I'm very circumspect. All right, well, why don't we just proceed and we'll try to do the best we can. Is your clock working? It is, Your Honor. OK, well, then you're going to tell us when your time is up.  May it please the Court. Inducement under section 271B has the most rigorous proof requirements of any of the infringement liability theories that Congress has put forth. Now, in this case, Power Integrations did not want to sue direct infringers who were also its own customers or even to take discovery from its own customers. Instead, Power Integrations invented a free-floating inducement theory that eliminates the requirement of temporal or causal relationship between inducing acts- Well, let's just say hypothetically you have a global market and you're producing all of your stuff in Germany. And let's assume you know that there's an American patent which reads on to your product. And you sell to distributors and you know they're going to move the product to the United States and sell the product. Is that not sufficient for inducement? And if it's not, why not? That would get you to one act of liability under Lucent, perhaps, Your Honor. But the problem is when you read Shumanada, when you read Dynacor, when you read Standard Haven, there's a separate analysis that needs to be formed with regard to damages or the scope of the liability. And that's where direct infringement becomes extremely important. Well, so let's assume there are products being sold that incorporate your client's product in the United States and that that's infringing. Why isn't that sufficient for inducement? Because you need to link, Your Honor, the specific intent to the inducing act. So in other words, there's a causation requirement. And the causation requirement is that a party has knowledge, specific intent, and that they know their actions. Okay, so if your client knows that it's far more likely than not that 20% of the products it produces are going to end up in the market in the U.S., is that not sufficient? That is exactly the scenario of Power Integrations 1. 20% doesn't get you there because it's plausible that it's 20% of consumer electronic products. There are multiple chip manufacturers and there are multiple power supply manufacturers. So to level set, this scenario is you have a chip manufacturer who sells a chip in Taiwan or in China. They sell them to one of many power supply manufacturers. The power supply manufacturers then, again, abroad, sell the power supplies or have a contract with the consumer electronic companies. The consumer electronic companies then decide, we're going to send these products to Germany. We're going to send these products to the United States. We're going to send these products to China. These are universal power supply chips. In other words, they're designed to operate anywhere in the world. And so when we had this discussion in the Power Integrations 1, when the court there held that there was insufficient evidence of inducement, the scenario came up of you could have 20%, theoretically, Your Honor, but you could also have zero. But isn't that a matter of calculating damages? Yeah, they've got to prove up damages. So if you have inducement and they can't prove up that there have been any sales of the infringing product in the U.S., then they don't get damages. But isn't that a damages question and not a liability question? That's a great question, Your Honor. The problem that we have here is that liability and damages, as you're pointing out, are inextricably intertwined. You do not have damages unless you have liability because the court has said… You might not get any money out of that or you might get $3 out of that. So that's the distinction. You need one and only one to establish direct infringement. You're right that then when you want to calculate damages, there's got to be for every act of inducement, there's got to be an act of direct infringement. But again, isn't one enough for liability and then the rest remainder a question of damages? So one is enough for liability. Lucent tells us that. But then Lucent and other cases tell us in order to determine what the damages are going to be, you have to assess the usage. You have to assess how many acts of direct infringement. I'm sorry to interrupt, but we're not even at damages. Judge Stark bifurcated this case, right? So we're only deciding here liability. So one is enough, right? And why was the evidence, therefore, that they put on, to the extent we can talk about some of it or whatever. I don't want to cross any lines on confidentiality. Why was that not sufficient for a jury to reasonably conclude? Sure. There were three instances of direct infringement that power integrations put forth at trial. For each of the three chips that were found in the United States, there is no evidence in the record as to when those chips were manufactured. There's no evidence as to when those chips were sold. There's no evidence of any encouragement or any discussions that related to those chips. And so there's no evidence of specific intent. Well, I don't understand. Okay, so let's hone in on that because I thought our previous discussion established that if they were sold to a distributor, and they know that it's infringing in the United States, and they know it's likely or possible that that distributor is going to sell the product in the United States, what more do you need? What kind of encouragement do you need to hold your client on the hook? Something more than ordinary business activities. So what we have here, and I'm talking about the MGM-Grugster opinion, what we have here is universal products that are supplied for universal power supplies. Manufacturer, defendant does not know where any of them go. They don't know that they go to the United States. They know that they may go to the United States. But the law from the Supreme Court is eminently clear, looking at Sony, looking at MGM-Grugster, looking at a bevy of cases, that the capability of infringing is not enough under 271B. So, Your Honor, that's what we have here. We have a scenario where the causation is never established. We have products capable of infringing, but there's no evidence that Fairchild knew that the products that ended up in the United States knew they were going to end up there. Let me ask you a hypothetical. I mean, I think I can agree with you to the extent that in these very complex web of supply chains, there's a lot of widgets being produced by a lot of different people that are getting combined, and then they're getting stacked onto yet other widgets, and then ultimately distributed around the world. And those widgets, you don't know where they're going to end up. They could end up in Europe, Japan, United States, and they function just the same in all those different countries. But what if a particular product is highly regulated in every single country, and then a place like the United States, there's some particular technical requirement. It will not work in the United States unless it satisfies some specific technical standard. Maybe a certain amount of voltage coming out of the socket or something else. As a technical matter, it just won't even work here in this country. And the United States is unique with that particular attribute. And so there's somebody in China that is making this widget and is designing that widget so that it will fulfill that technical requirement for it to operate in the United States. No other country has that requirement, but the United States does. And the company in China knows that. And so it makes the product so that it fulfills that U.S. requirement. Doesn't that show a particularized intent to get that product into the United States, particularly when the customer that purchases these widgets also knows that the United States has this unique requirement? Judge Chen, I agree that if there is a unique technical requirement that a product would only operate in the United States. No, no, it can operate everywhere else, but the United States has a plus requirement, this additional unique requirement that's only to the United States. And then the Chinese company goes out of its way to make sure that the widget it's producing fulfills that additional unique requirement. I think if there was evidence of that nature in the record, which there is not, that you'd be getting a lot closer to the causation requirement that we see in Akamai and in Camel and in that line of cases. Here, there's an Energy Star requirement in the United States. That has to do with energy efficiency. That same standard, Your Honor, has been adopted by many other countries. So the same standard applies to many other countries. And consumers require, our consumers in Asia, that we satisfy compliance with all international standards. And that's because what we're designing is international. And here's the trouble that I have, which is when I look through the sites to the record and I was reading the trial transcript, I didn't see, and I'm trying to put myself in the shoes of the jury and trying to figure out what did they hear. We can't look at extra record evidence. We can only go by what did the jury hear. I didn't see any specific testimony that said, if the product complies with a French energy standard or a Japanese-Russian standard, it necessarily also will comply with the United States energy standard, such that the United States standard, whatever it is, is entirely superfluous. Can I give you a couple of record sites to look at, Your Honor? Yeah. A16398, A16481, A16524. Well, do you want to quote me something? Because, I mean, there were a couple statements that said all these different countries have similar standards. And then there was another statement that said there was an assertion that France or Europe and Japan are ahead of the U.S. in terms of energy standards, right? But none of those necessarily state that you fulfill one, you necessarily fulfill the United States one. In fact, there's other testimony that says from Chang, you want your products to comply with the U.S. spec, with the China spec, with the Europe spec, with the Japanese spec, you name it. And so what the jury heard was there's a lot of different specs, there's a lot of different standards, and you want your product to meet all those standards because you want to push your product globally into every single market possible that's on the planet, including the United States. Correct his site, A16778 shows that Energy Star has been adopted in many different countries, Your Honor. And I agree with you. My point with regard to how the law has... A16778 is also the same page where Chang goes on and says there's all these different specs for each individual country, and they have to make sure that their designs comply with each country's spec. So, again, we're talking about the capability of infringement. These products do not necessarily infringe, and so you have to, on an instance-by-instance scenario, there were 171 customers that were alleged to have used these chips in an infringing manner. Now, again, how would you do that? You would go to the customers, the end users, Samsung, for example, taking Power One, and say, how many products did you send to the United States? And if you could then link the knowledge of Fairchild and encouragement, you would then have inducement. But to your point, what the jury was told here, Your Honor, is that they could find inducement even if the encouraging acts did not result in infringement. That was 2012. We know that Akamai says that is wrong as a matter of law. Sorry, are you talking now about the jury instruction? I am, Your Honor. Okay. And so they were also told, Your Honor, this is the most troubling part, that inducement under 271B could exist even if the encouragement by Fairchild was never received. So the total break in causation, this is what was advanced by Power Integrations. They advanced this instruction because they knew they did not have the evidence of direct infringement. And to your question, Chief Judge Post, what's the problem? The problem is the Seventh Amendment. We cannot go back to a second jury and ask the second jury, we have one finding of liability that involves one product, it involves a single sale. We can't ask the second jury, how broad is the scope of infringement and what should the damages number be because they'll have to do the job that the first jury should have done, which is to identify who the direct infringers were, who were actively induced. Maybe damages will only be $2 then. If the court were to remand with the evidence being restricted to the isolated acts of direct infringement only, that might be an appropriate solution here. However, our point with regard to that, Your Honor, is we don't know the date or the activities. So again, specific intent under 271B requires more than this capability of infringement. And that's all we have here. Your Honor, I am at my time. Subject to any questions that the court may have, I will self-police. Let me just... Give us a moment. There's so many issues here. So many, many issues. Can you say something about the 605 patent? And what's your understanding of law of anticipation? If a prior art reference, the operation of a prior art reference meets the claim limitations sometimes, but then other times when a prior art references the product is operating, it doesn't meet all the claim limitations, does that count as a 102 anticipation reference? It does, Your Honor. As long as you can satisfy with a single reference, if we're talking 102A, all of the elements, the fact that in certain other circumstances you don't satisfy all of the elements, you would still have a 102 anticipation if you can establish that in some circumstances it does do that. And that was the evidence of record here. Dr. Wee provided that evidence. He put that evidence forward. And it was largely undisputed. Dr. Kelly, the expert for the plaintiffs, largely acknowledged that this threshold would increase during the whole process of startup. So he largely acknowledged that the elements were there. What about that screenshot from the oscilloscope where it looked like the current was flatlining across during the cycle? Do you know which figure I'm talking about? I think that was just a demonstrative. That was fake. I don't think it even made its way into evidence, Your Honor. That was not from the prior art. So that wasn't something that I'm remembering. I just remember it was a demonstrative. I don't remember it as being in any way contradicting the fact that all of the elements were found in the mage reference. The mage reference lays out each and every one of the elements. And that is why 102 should have been found as a matter of law, Your Honor. Thank you. And we'll restore your three minutes for rebuttal. Thank you, Your Honor. Good morning. May it please the Court. I'd like to respond briefly on inducement and then get to the 972 claim construction issue, if I may. First of all, on inducement and sort of what the legal test and the legal standard is, power integrations didn't invent anything. If anything, Fairchild is contending for a rule that is not supported by this Court's cases and has never been applied to our knowledge before. It's actually striking. Neither side can find a case that says anything like there has to be a direct connection between a given inducing act and a specific act of direct infringement by a specific customer. No case says that. And, in fact, as we cited in our brief, there are at least three cases of this Court that make clear that is not the standard. Lucent is the poster child for that, of course. You're telling us that the last two sentences in the jury instruction were comported with current law? Absolutely. Absolutely. All the last two sentences of the jury instruction say in context is you don't have to have a direct causal connection between the inducing acts and the direct infringement that results from those acts. Well, are you trying to say that we should interpret these two sentences as saying that you can prove induced infringement by circumstantial evidence? Yes. Because I think it's a little too much to say that an alleged inducer can engage in a whole bunch of activities in a dark room all by himself and then all of a sudden there happens to be direct infringement on the other side of the planet and then we have, voila, liability for induced infringement. Certainly true. So can you clean that up for me exactly? These two sentences could be read to mean that. They could. In isolation, the sentences can be misread. But, of course, they're at the very end of a fulsome instruction on inducement that actually begins by telling the jury that the inducer has to have taken some action intending to encourage or assist actions by others with knowledge and awareness and then use by others infringes. And so it's viewed in the context of the instruction overall. I don't understand. I think that doesn't that summarize what Judge Chen was just talking about? You're in your room by yourself and you do this and nobody else hears you and that's sufficient to establish inducement as long as there's some direct infringement? Well, I don't think so, Your Honor. With all due respect, the first requirement of the jury instruction here is encourage or assist actions by others, not in a dark room in isolation, by others. And this court's case is Dynacore is really, I think, the best. Yeah, but the last two sentences were talking about Cabin I by the saying, however, and then it goes on to clarify. So whatever you take away from the beginning and we assume that that portion of the instruction is a correct statement of the law, that doesn't override the sentences. In fact, the last two sentences that we're struggling with that we think raise some question, however, they're amending whatever was said before. So I don't understand. If your point is that if you read it together, the first stuff overcomes the problems with the last two sentences, I don't see that. Well, I'm not actually saying that there are any problems with the last two sentences. What I'm saying is if you read them together with what comes before, it's a fair statement of the law. And I don't have any problem with the last two sentences. In fact, the last sentence in particular is almost a straight paraphrase from the RICO case, which explicitly says the inducing acts need not even have been communicated to the alleged direct infringement. But if you look at RICO, the statement that is taken in the context of the narrow question of whether there was circumstantial evidence of specific intent and whether that could include unsuccessfully communicated encouragement, I don't think that statement went to what we're looking at here. I just don't. Am I wrong about what context RICO used that? RICO made the statement in the context of intent. That is true. And so it's unassailable that that's true. Circumstantial evidence of specific intent can include unsuccessfully communicated encouragement. But it's also true, again, look at Lucent, look at Bill of Lading, those two cases, that there is no requirement that the inducing acts in fact be linked to a specific act, be linked to a specific infringer. That was really the whole issue with Lucent. In fact, was you had a category of customers who were being induced by the infringer, the defendant who got sued, and there were inducing acts that were proved. And it was reasonable in that case to infer that at least one infringement had happened somewhere by someone, unidentified, with no direct linkage at all. And that is really the law on inducement. Bill of Lading picked up on Lucent and said, yes, that is true. The parties can be unknown. It can be proved by circumstantial evidence. But just so I understand your theory, there has to be some causal link as a theoretical matter, at a minimum, between the actions that the inducer takes and the ultimate direct infringer. Correct. Is that the case? Yes, that is the case. So then maybe what you're really trying to say is that what the jury needs to conclude is that there's a reasonable inference that can be made that all these actions that are occurring over here in Asia, there is a causal link between those actions and the ultimate direct infringement that occurs in this country. Correct. But these two sentences don't say that. These two sentences in isolation don't say that, I agree. But I also don't think that they erase all requirements for some relationship. The first sentence says the infringement need not have been actually caused by the party's actions. That's a true statement. They don't have to have been actually caused by the specific inducing acts that we're talking about. That's clear in the cases I cited. It's clear in other cases. I'd like to direct you, Your Honors, to Dynacor as well, which uses this phrase related to. So, Judge Chen, your dark room example would not make it. It would not satisfy. There has to be some relationship between the inducing acts and the ultimate direct infringement. Yes, we don't dispute that. We prove that in spades. This is not a dark room case. This is a case where Fairchild went through a very substantial amount of effort to target the U.S. and to make sure these chips came to the U.S. Actually, in that regard, counsel made a statement that. I'm not sure what we can talk about and what we can't talk about, but what's the best evidence? It seems to me there might be inferences drawn. Again, this is all in the brief. There are four or five specific examples of targeting U.S. customers, specifically targeting. Can I ask you hypothetically if you're producing something in Germany and you're selling it to distributors and there's a long chain of people and it's theoretically possible that some of these products may end up going to the U.S., but there's no specific targeting of the U.S. market whatsoever, but there might be some knowledge. I mean, if asked, you might say, well, I don't know. One of these distributors probably sells something in the U.S. Is that sufficient? If it's only knowledge, it's not sufficient. Well, you know about the patent. You know that your product infringes the patent. It's not sufficient. If all there is is knowledge that it might end up in the U.S., I think that's not sufficient. But, of course, that's not this case, right? Again, we can't, I think, cite with specificity. Fairchild's executives admitted they knew for a fact infringing products were coming to the U.S. We found infringing products in the U.S. Fairchild encouraged them. Okay. I thought you said knowledge isn't enough. So you're saying knowledge is enough? No, no. I'm sorry. Not knowledge alone. They intended for those products to come to the U.S., and they took a number of affirmative acts to encourage them coming to the U.S., like targeting U.S. customers, like indemnifying customers. Specifically, they're indemnifying customers in Asia for U.S. patent infringement in response to customers who came to Aztec, for example, is a great one. After power integration sues Fairchild, Aztec comes to Fairchild and says, hey, we needed indemnity because we are sending your products to the U.S. And Fairchild, at that time, SG, says, okay, we'll give you the indemnity. I mean, it doesn't get any more direct than that. We've never said an indemnification provision alone is enough to establish proof of inducement, have we? I don't think there's a case that says indemnity alone is enough. True, there's this MEMC case that Fairchild cites. That's a very different indemnity if the court looks at the indemnities. That's a general indemnity that's not particular to any particular products or country. The Aztec indemnity is very different, number one, and particularly when you consider the context in which this indemnity arose. It was driven clearly by this litigation, that the jury heard about the timing of it and the context in which it arose. And then the other thing I would say, Judge Prost, in terms of specific evidence of encouragement, is this regulatory point that Judge Chen raised. I mean, you've got products that these are highly regulated products. They're power supply chips. And they have to comply with Energy Star in the U.S. And actually there's even a California standard, the California Energy Commission CDC standard. And there's lots of evidence in the record, again cited in the brief, about Fairchild. Customers telling Fairchild, we have to meet those regulations. Fairchild is saying in substance, okay, we'll help. Our chip can meet those regulations when used in a power supply. And, I mean, that's, again, a clear link to we want your stuff to come to the U.S. All you have is some sort of encouragement and some of the sales information you have in the record in terms of e-mails that they were trying to promote sales in the U.S. Doesn't there have to be a linkage between the actual acts of direct infringement being the result of those sales efforts or not? It depends on what you mean by direct. I think if by direct you mean what Fairchild is seeking. I mean, if the purchasers you found in the U.S. that you identified as direct infringers never were not targeted, were not the subject of all of those sales endeavors that Fairchild had in the U.S., is that a problem for you? No, I don't think it is because of the circumstantial evidence point. This just comes back to what Fairchild's argument really is, I think, which is you've got to have direct evidence, not just circumstantial, direct evidence of a direct link between a specific inducing act and a specific customer. I mean, that breaks down at every level when it's articulated in that way. But just to follow up on the Chief's point, is it a dry hole for you if you have evidence that Fairchild was trying to make sales with very specific certain American companies but then no sale was ever made and so therefore there was no direct infringement that resulted from those attempted promotion efforts? Well, again, it depends on whether your question is hypothetical or tied to this case. In this case, the Fairchild's activities were the same with respect to all customers. I mean, this is not a case where they did some sort of activities for some customers and not for others. But right now we just have in the record very limited evidence of direct infringement, right? A few isolated sales and then maybe some distributor was selling chips. But other than that, all these other examples of targeted efforts at certain companies to make sales with them, there wasn't any additional evidence in the record that said, and they made those sales and those sales were in the United States. So I would say two things. Number one, there are actually four examples. Fairchild says three. There are four examples of direct evidence of direct infringement in the U.S. by customers. HP, Acer, Samsung, DigiKey. The HP example, and even if you apply the most rigorous test you could possibly imagine, HP was selling printers with printer adapters in the U.S. made by Aztec, who was the very company that Fairchild had indemnified against patent infringement as a result of litigation between these parties. So that is a direct one-for-one relationship and at least one example. The second thing I would say, Judge Chen, is there actually is circumstantial evidence of many other customers to whom sales were made. Apple, LG, Emerson, Sony, Dell, Lenovo, Nintendo, Motorola, Nokia, IBM. These are all cited in the brief. Are we going to be able to rely on those purported sales that weren't actually deemed to be sales when it comes to damages? Bifurcated case, right? You're going to do discovery on damages? Yes. This is another sort of artifact of the case being bifurcated. We did not receive customer-by-customer sales data from Fairchild until 10 days before the trial started. And so those issues will be vetted in the damages portion of the case. And so my answer to your question is yes, it may well turn out. We know that they were induced and the damages, the sales data, will we think show that in fact sales were made in the U.S. to those companies. Do you want to turn to your question? Yeah, I'd like to. I wanted to make sure your questions were answered so quickly. 972, claim construction. Obviously, we feel this is a fairly straightforward issue and means and. Do you want to touch on what I'd be more interested in? The DOE question? That's the 972? Yes. So on doctrine of equivalence, the issue there is fundamentally whether Dr. Wee's testimony is sufficient as a matter of law to sustain the verdict. And this court, you're aware of what the substance of the testimony is. It's a single question and answer, completely conclusory. There's no analysis of any limitation. What about the vitiation issue? Well, that's a separate reason why we think the verdict on DOE can't stand. I mean, you either have distinct signals or you don't. And, again, this court has issued a number of opinions saying, you know, when you have a term that is a black or white term, you have it or you don't, you can't use doctrine of equivalence to basically erase that term. So the Honda case, plurality can't be equivalent to one. The Moore-USA case, minority can't be equivalent to majority. The Augme Technologies case, embedded code can't be equivalent to linked code. You know, there's any number of these examples where the court has said, look, if the claim requires a specific thing, and that thing does not admit of sort of degrees or variation, you can't erase it by DOE. And here we have it's distinct or it's not distinct. So just hypothetically, any time a patent claim says device 1 does function 1 and device 2 does function 2, and the accused product has just one device that performs both function 1 and 2, then therefore there can't be, as a matter of law, DOE because that's a vitiation? No. I think it depends very specific to how the claim is written. There are cases that say if you have, for example, a means plus function claim that may have multiple elements, it's okay to find in the infringing device perhaps one structure that performs the function of multiple elements. So it depends very much on the term used. But, again, when you have a case that uses a term like 1 or majority or distinct, I mean, you know, it's either distinct or it's not. Is it sort of distinct? Is it distinct in part? I mean, this is one of those terms that we submit would be vitiation. If I could just finish my answer, Judge Schall, to your question on DOE. The other problem that they have here, of course, is that their expert testimony is woefully deficient under any number of this Court's cases. The most recent case was AXO where, in fact, if you compare, in the AXO case, A-K-Z-O, side-by-side with Dr. Wee's testimony, it's actually striking how similar and how conclusory. It's one paragraph. It's one answer. There it is, and this Court said, uh-uh, that is not sufficient to create a factual issue and to sustain a verdict under DOE. The other case I would point you to is the AWGMI case where there was even more expert testimony. There were probably a half a dozen paragraphs in a declaration, but there was no analysis of the way. It was a function-way-result analysis, just like here. There was no analysis of the way, and the Court said, that's not enough. We recognize it's expert testimony. It's conclusory. That can't support a DOE verdict. So either way, the DOE verdict has to be reversed. Thank you. Before we go, I'm a little concerned about the 605 patent, the Mage reference. Could you speak to that? The whole question of whether occasional anticipation is anticipation. I think as you phrased it, the answer to that question is yes, but factually that isn't what happened here. If they can show all the elements present, that's enough. But this was a classic battle of the experts. Their experts said the element is there. This required a variable current limit that in fact varied during the on-time of the switch. It was a very specific requirement. Didn't Dr. Kelly say that during the start-up time of Mage is also on-time? He said yes, that that is during the time that the switch is on, but he also said it doesn't vary. This was the demonstrative that he showed. He actually took the specific parameters in the Mage circuit, he analyzed them, he graphed them, and he testified about it. He showed the jury the demonstrative, and he said it's not varying during the on-time of the switch. It just isn't. Dr. We disagreed. He's entitled to disagree. It's a classic fact issue that the jury resolved in our favor, and substantial evidence I think is more than present on that issue. Okay. We'll restore two minutes of rebuttal if you need it for your cross-examination. Thank you. Thank you. The discussion regarding inducement with the court and Power Integrations Council highlights the problems that we have in this scenario. They're trying to take the same tortious activity, that's their argument, and apply it across 171 different customers. In other words, if we prove that AT&T was induced and you had the same type of high-level tortious activities regarding Sony, Sony was necessarily induced. That is not the law. Dynacor says a party must tie their claims of inducement damages to identified instances of direct infringement. Wordtech says defendants' liability for direct infringement must relate to identified instances of direct infringement. Glenn Ayers is very instructive on this case because Glenn Ayers says damages assessed for indirect infringement normally will be the same as damages that would be assessed had the patentee sued and obtained damages and a judgment from customers. What about a case like Grokster, which is a copyright case obviously, but the idea was there are millions and millions and millions of unauthorized downloads of copyrighted material using Grokster's technology and then the whole question was, okay, did Grokster take some actions to induce all of those hundreds of millions of downloads and I don't think it was required of the copyright holder to prove that for each of those individual direct infringers, Grokster successfully communicated and induced all those college kids to do those downloads, right? Grokster is a different scenario in that Grokster intentionally targeted Napster customers. In other words, they knew that Napster was being used in the United States and they actually sent emails to entities in the United States and said if you're looking for another file sharing system, you may want to consider what Grokster offers. There is no argument with regard to the causation linkage when you look at Grokster. Now if you go back and you look at Sony, the Supreme Court's opinion in Sony, they find there that there is an inadequate causation connection. The evidence that existed in Sony at the Supreme Court is very, very similar to what we have here. We have scenarios where products may infringe if you prove that and they may also not infringe if they're sold in Asia and if they stay in Asia exclusively. So the Sony case provides the scenario where you do not have contrib or inducement. The Grokster case is different because you have that direct reach out, that direct causation. I guess we have testimony here that the customers of Fairchild wanted universal chips, right, that met all regulations and laws of every country, including the United States. It's just like the Betamax players. I hate to go back to Betamax, Your Honor. In the Sony case at the Supreme Court, they're capable. They're capable of infringing. That does not get you there. What Grokster tells us is find the causation, find the direct connection to the United States, and that's what we do not have here. That is the fundamental failing of evidence. Just because you know that it's possible that your product will come in the United States and you might design them so that if they do come in the United States, they're satisfying an energy standard here. That does not show the specific intent to cause another to infringe directly. And that's the problem with the jury instruction that Chief Judge Prost pointed out. In fact, the jury instruction here says if you encouraged, if you just thought about it and encouraged, it doesn't even matter whether that encouragement was received and it doesn't matter that infringement took place. Now, we know, remember, this jury instruction, Judge Stark's mindset, was given in 2012. So global tech had just come out. It was before Power Integrations won. Judge Stark asked me during the charging conference, will Power Integrations won? Because I told him the same inducement problem and causation existed there. He asked me, will that save me? Will that save me, the opinion? And we told him the opinion was a few months out and so it wasn't going to get him there. But Akamai, at that time, the law was that you could satisfy 271B without proving direct infringement. The Supreme Court changed that and then clarified that in Campbell. All of those changes demonstrate the error in the jury instruction and the error in the finding that inducement exists here because we do not have the causal connection that was required. Subject to any questions that the court might have on the inducement issue, I'll turn to, quickly, the 972 and I'll just address the doctrine of equivalence section of that, Your Honor. Thank you. So first, we should understand that there were two different non-infringement positions that were put forward by Dr. Wee, the expert for the defendant. The distinct signals non-infringement position was one, but it's very possible that the jury accepted the other non-infringement position. So that's what Judge Stark said when you read his Jamal Rowling, and there's no reason to question Judge Stark's decision on that because it hasn't been demonstrated. There was no special verdict form or anything of that nature to indicate which. For me, I only saw one theory. I didn't understand how, I guess, Judge Stark was able to identify two theories. So the theory was there's only one feedback signal. So the second theory was that the second feedback signal was not a feedback signal at all. So the two positions were the second feedback signal is not a feedback signal. Therefore, the other position was the two signals identified by Dr. Wee are not distinct. Those were the two different non-infringement positions that Dr. Kelly put forward at trial. It could be that the jury said, OK, we're going to find literally those two different signals are not distinct. But Dr. de Quivant still is satisfied because it's close enough to being a feedback signal. Dr. Wee identified the feedback signal. So he put that testimony into the evidence. And it could be that the jury accepted that, his opinion on that. That was a battle of the experts, essentially. That's the only point that I have with regard to that. With regard to the vitiation point, when you read Claim 7 and read Dependent Claim 8 in context with Claim 7, you could see that you have a claim here where you have different current sensing and you have different requirements. Claim 8 clarifies Claim 7. And as a matter of law, it is not vitiated when you read in context the dependent claim with the independent claims. And finally, with regard to the sufficiency of the testimony put forward on Doctrine of Equivalence by Dr. Wee, Judge Stark, in his J-Mal ruling, concluded that this was a scenario that was very similar to the Pace versus Toyota scenario, where you can look to the testimony that's provided regarding liability, provided regarding the functioning of the circuitry, things of that nature. The jury heard all of that. And they can use that in arriving at their Doctrine of Equivalence decision. So the cases that counsel cited are distinguishable because Judge Stark looked to the record as a whole and concluded that under Pace versus Toyota, there was enough here. Is it enough for an expert to just point to an output line and say, that's a feedback signal? I would say that he would also have to describe the way and the result at some level that that was serving as a feedback signal. And if he did so, and if he offered the opinion that there was insubstantial differences, that would get you there. And he does that when you look at the totality of his testimony. They're essentially criticizing his boilerplate function way result analysis, saying there wasn't enough there. But there was a lot of other discussion throughout the trial. The Doctrine of Equivalence portion was at the very, very end of extensive testimony, Your Honor. Didn't the inventor, Mr. Yang, in a couple different places during his testimony, really highlight the importance of the two feedback signals to do the regulation? I think that he did talk about that as being an important feature. Like a moment of truth in the middle of the night, right? It was on a cold winter night, if I recall. Right. Yes. So it was clearly important. Your Honor. But Dr. Wee showed, in the infringing products, the two distinct signals. So he showed it. He talked about it. He testified to that. And the jury concluded that there was an equivalent there. So there's no reason to say that there's insufficient evidence as a matter of law. This essentially was a battle of the experts. And the jury chose to accept the testimony of Dr. Wee with regard to the equivalent nature of those features. Thank you. Thank you very much, Your Honor. Thank you. The only cross-appeal issue addressed was the doctrine of equivalence on 972. I'll just say one thing, and that is it doesn't actually matter what theory you think the jury found missing as a matter of literal infringement, whether it was the distinctness requirement or the feedback signal requirement, because the test at the end of the day is whether the evidence in the record on equivalence is sufficient to prove the presence of either one. And if you look, again, I'll just refer you to Dr. Wee's, the sum and substance of his testimony. It's at Appendix 17026 through 027. It is a single question and answer. It could not be more cursory. It says nothing at all. There's no analysis and certainly no reference to feedback, whether something being open loop versus closed loop is equivalent or not, nothing about the distinctness requirement. It's just not there. And the last thing related to that, I will say, is even if you allow them to refer back to their literal infringement analysis, Fairchild has not cited you to any portion of the literal infringement analysis that would pass muster under function way result, that would pass muster under doctrine of equivalence. There's no analysis there either. So either way, the DOE verdict has to be set aside. Thank you. We thank both counsels and the case is submitted.